## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 10 2017, 7:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bradley A. Bible,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | May 10, 2017<br><br>Court of Appeals Case No.<br>20A03-1608-CR-1897<br><br>Appeal from the Elkhart Superior Court<br><br>The Honorable David C. Bonfiglio, Judge<br><br>Trial Court Cause No.<br>20D06-1503-F6-210 |

**Brown, Judge.**

[1]    Bradley A. Bible appeals his conviction for operating a vehicle while intoxicated as a level 6 felony.  Bible raises three issues which we revise and restate as:

> I.    Whether the trial court erred in allowing the State to amend the charging information;
>
> II.   Whether the trial court erred in submitting a verdict form to the jury; and
>
> III.  Whether he was denied the effective assistance of trial counsel.

We affirm.

### Facts and Procedural History

[2]    On January 26, 2015, Daniel Drake was traveling on Lincoln Way in Elkhart County and observed a traffic accident involving a moped driven by Bible and called 911.  Elkhart County Sheriff's Deputy Matt Newman responded to the scene, spoke with Bible, and noticed that he had the odor of alcoholic beverages on his breath.  Bible said that he had consumed alcoholic beverages that evening.  Deputy Newman was unable to perform any field sobriety tests because Bible was being treated for injuries and prepared to be transported to the hospital.  Deputy Newman gave Bible a preliminary breath test, and the test was positive for alcohol.

[3]    At the hospital, Deputy Newman administered the horizontal gaze nystagmus test, which Bible failed.  Deputy Newman read Bible his Miranda rights, and Bible said that he drank a malt beer at approximately 3:00 that day.  Deputy Newman then read Bible an implied consent advisement, and Bible submitted

to a blood draw which was later tested and indicated that his blood exceeded .08 grams of alcohol per one hundred milliliters of blood.

[4] On March 6, 2015, the State charged Bible with operating a vehicle while intoxicated as a class A misdemeanor and operating a vehicle while intoxicated with a prior conviction as a level 6 felony. On November 9, 2015, the trial court scheduled a jury trial for March 21, 2016.

[5] On March 21, 2016, the State filed an amended information in open court charging Bible with operating a vehicle with an alcohol concentration equivalent to at least 0.08 grams of alcohol per 100 milliliters of the person's blood as a class C misdemeanor.[1]

[6] During the jury trial, Drake and Deputy Newman testified. During the testimony of Deputy Newman, the prosecutor introduced and the court admitted a stipulation regarding the toxicology report. The stipulation stated in part that Bible's blood was drawn at 9:17 p.m. on January 26, 2015, and that the blood exceeded .08 grams of alcohol per one hundred milliliters of blood. Bible testified that he was struck by another vehicle, had a problem with consciousness after the collision, told Deputy Newman that he had consumed alcohol, and did not feel that he was impaired when he was operating the

---

[1] Bible observes that the file stamp on the copy of the amended information states March 22, 2016, but "presumes that the March 22, 2016 date was an error and defers to the transcript of proceedings." Appellant's Brief at 6 n.1.

moped. He indicated that he was not disputing the blood alcohol level and that "[t]he night before I did drink, and I have been known to drink heavily. So I might have had some hangover alcohol in my system, or something." Transcript at 74.

[7] After the presentation of the evidence, the court stated: "Just for the record. At the – before the – we started in the courtroom this morning, counsel for the state did move to amend the charging information from the Class A Misdemeanor to Class C Misdemeanor. And defendant had no objection to that." *Id.* at 77. The court then instructed the jury with respect to the offense of operating a vehicle with a specified amount of alcohol as a class C misdemeanor. Specifically, the court instructed the jury:

> Indiana Code § 9-30-5-1(a)(1) defines Operating a Vehicle with Specified Amount of Alcohol as follows: a person who operates a vehicle with an alcohol concentration equivalent to at least .08 grams of alcohol but less than .15 grams of alcohol per one hundred milliliters of the person's blood commits Operating a Vehicle with Specified Amount of Alcohol, a Class C Misdemeanor.
>
> To convict the defendant, the state must prove each of the following elements: 1. the defendant; 2. Operated a vehicle; 3. with an alcohol concentration equivalent to at least .08 grams of alcohol but less than .15 grams of alcohol per one hundred milliliters of the person's blood.
>
> If the state fails to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty of

Operating a Vehicle with Specified Amount of Alcohol, a Class C Misdemeanor.

*Id.* at 82.

[8] The jury found Bible guilty of operating a vehicle with the specified amount of alcohol as a class C misdemeanor. The verdict form signed by the foreperson states: "We, the jury, find the Defendant, BRADLEY A. BIBLE guilty of: Operating a Vehicle with Specified Amount of Alcohol, a class C misdemeanor." Appellant's Appendix Volume II at 161.

[9] The court then held an enhancement phase addressing the enhanced charge of operating while intoxicated as a level 6 felony. The jury found Bible guilty of operating while intoxicated as a level 6 felony.

[10] On June 22, 2016, the court held a sentencing hearing. The prosecutor argued that Bible had not taken responsibility, and his counsel stated:

> [A]s far as, not taking, taking responsibility I would agree we had a trial, but the only reason we had a trial is because it was charged as an A Misdemeanor and there was no endangerment that you could show.
>
> [The prosecutor], and she had a right to do this, I'm not saying this, but she amended it to, basically, Driving with Over the Legal Limit which we understand. He would have pled to that. Okay. He would have pled to that. He just would not have pled to endangerment, because there was no evidence that he was driving while endangering the public. He was on a moped preceding [sic] in his lane and got ran off the road or got hit and

> that's – at trial I had tried to get him to plead, but we were
> already there for trial.

Transcript at 111-112. The prosecutor then stated: "So he didn't plead though?" *Id.* at 112. Defense counsel answered: "No. But he would have to over the legal limit which is what was proved." *Id.*

[11] The court merged the conviction for operating a vehicle with a BAC of .08 or more into his conviction for operating a vehicle while intoxicated and sentenced him to 540 days.

### *Discussion*

### I.

[12] The first issue is whether the trial court erred in allowing the State to amend the charging information. Bible argues that the amended charging information substantially changed the elements the State was required to prove to find him guilty and substantially prejudiced his ability to present a defense. The State argues that Bible does not cite to authority that a trial court must *sua sponte* make, and sustain, an objection to an amended information. It also contends that Bible does not raise fundamental error and that fundamental error does not exist.

[13] Bible's failure to object to the trial court's pretrial grant of the amended charging information and failure to move for a continuance waived his right to challenge the amendment. *See Wilson v. State*, 931 N.E.2d 914, 918 (Ind. Ct. App. 2010) (holding that a defendant's failure to request a continuance after a

trial court allows a pretrial substantive amendment to the charging information over defendant's objection results in waiver), *trans. denied*. However, we will address Bible's claim in the context of whether he was denied the effective assistance of trial counsel in Issue III.

## II.

The next issue is whether the trial court erred in submitting a verdict form to the jury. Bible appears to argue that the verdict form incorrectly stated the elements necessary to find him guilty and confused the jury to the extent that it made the jury verdict unreliable. The State contends that the final instructions properly instructed the jury on the elements of the class C misdemeanor charge in terms identical to those used on the verdict form and that the verdict form is not deficient or fundamentally unfair because it identifies the offense but does not also recite the elements of the offense.

The verdict form signed by the foreperson states: "We, the jury, find the Defendant, BRADLEY A. BIBLE guilty of: Operating a Vehicle with Specified Amount of Alcohol, a class C misdemeanor." Appellant's Appendix Volume II at 161. The court instructed the jury with respect to the offense of operating a vehicle with a specified amount of alcohol as a class C misdemeanor including the elements the State was required to prove. We cannot say that the language of the verdict form requires reversal.

To the extent Bible cites *Womack v. State*, 738 N.E.2d 320 (Ind. Ct. App. 2000), *trans. denied*, for the proposition that where a verdict form provides information

that is not the same as the offense charged, reversal is warranted under Article 1, Section 19 of the Indiana Constitution, we do not find *Womack* instructive. In *Womack*, we addressed a verdict form that "effectively mandated a conviction of class D felony Possession upon the finding of a prior marijuana conviction." 738 N.E.2d at 328. We cannot say the verdict form Bible challenges mandated a conviction or warrants reversal. *See Rowan v. State*, 431 N.E.2d 805, 819 (Ind. 1982) (holding that a jury in a criminal proceeding may return a general verdict, that there is no requirement that the verdict must recite the entire charge, and that the verdict was consistent with the crime charged).

## III.

[17] The next issue is whether Bible was denied the effective assistance of trial counsel. Bible argues that he received ineffective assistance of counsel when defense counsel failed to object to the State's amendment of the charging information, when counsel stipulated to the blood draw test results, and when counsel failed to object to the verdict form that was submitted to the jury. Bible argues that stipulating to the blood alcohol level eliminated that State's requirement to call witnesses to prove statutory elements and allowed defense counsel to proceed with trial without putting on any evidence to contradict the blood alcohol content findings or cross-examining the accuracy of the results. The State argues that, on the present record, defense counsel and the State had no occasion to recite prior understandings or agreement for the trial court and that Bible failed to prove deficient performance merely because his trial counsel

did not insist on an earlier motion whose conclusion was certain or because counsel did not renege on a mutual agreement.

[18]    Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). "[L]ogic dictates that 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Hilliard v. State*, 609 N.E.2d 1167, 1169-1170 (Ind. Ct. App. 1993) (quoting *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069)). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[19]    When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance

is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998). In order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection would have been sustained if made. *Passwater v. State*, 989 N.E.2d 766, 772 (Ind. 2013) (citing *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied*, 535 U.S. 1019, 122 S. Ct. 1610 (2002)).

[20] As for Bible's argument that his trial counsel failed to object to the verdict form, we cannot say that the verdict form warranted reversal or that his trial counsel was ineffective on this basis. As to the stipulation to the blood test, we observe that Bible does not point to any deficiency in the blood test or test result to which his trial counsel should have pointed.

[21] With respect to Bible's claim that his trial counsel failed to object to or move for a continuance following the amended charging information, Ind. Code § 35-34-1-5 governs amendment of charges and provides:

(b) The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:

(1) up to:

(A) thirty (30) days if the defendant is charged with a felony; or

(B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;

before the omnibus date; or

(2) before the commencement of trial;

if the amendment does not prejudice the substantial rights of the defendant. When the information or indictment is amended, it shall be signed by the prosecuting attorney or a deputy prosecuting attorney.

(c) Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

[22] "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge." *Brown v. State*, 912 N.E.2d 881, 890 (Ind. Ct. App. 2009) (quoting *Ramon v. State*, 888 N.E.2d 244, 252 (Ind. Ct. App. 2008)), *trans. denied*. "Ultimately, the question is whether the defendant

had a reasonable opportunity to prepare for and defend against the charges." *Erkins v. State*, 13 N.E.3d 400, 405-406 (Ind. 2014) (quoting *Sides v. State*, 693 N.E.2d 1310, 1313 (Ind. 1998), *abrogated on other grounds by Fajardo v. State*, 859 N.E.2d. 1201, 1206-1207 (Ind. 2007)), *reh'g denied*, *cert. denied*, 135 S. Ct. 967 (2015). An amendment is one of form and not substance if a defense under the original information would be equally available after the amendment and the accused's evidence would apply equally to the information in either form. *Id.* at 406. An amendment is of substance only if it is essential to making a valid charge of the crime. *Id.*

[23] Even assuming that the amendment was one of substance, we cannot say that reversal is warranted or that Ind. Code § 35-34-1-5 necessarily required dismissal of the amended charge had Bible's counsel objected, as the trial court could have continued the trial. *See Keller v. State*, 987 N.E.2d 1099, 1109 (Ind. Ct. App. 2013) (observing that the trial court explained that a continuance alleviated its concerns of prejudice because it allowed the defendant time to prepare a defense to the new charges), *affirmed on reh'g*, 989 N.E.2d 1283, *trans. denied*. Bible also does not explain how a continuance would have benefitted his position. Further, at the sentencing hearing, his counsel stated: "at trial I had tried to get him to plead, but we were already there for trial." Transcript at 112. The record does not provide further detail regarding any discussion between Bible and his trial counsel regarding the amended information.

[24] We observe that Bible is raising a claim of ineffective assistance of counsel on direct appeal. A post-conviction hearing is normally the preferred forum to

adjudicate an ineffectiveness claim. *Lewis v. State*, 929 N.E.2d 261, 263 (Ind. Ct. App. 2010) (citing *Woods v. State*, 701 N.E.2d 1208, 1219 (Ind. 1998), *reh'g denied*, *cert. denied*, 528 U.S. 861, 120 S. Ct. 150 (1999)). This is because presenting such a claim often requires the development of new facts not present in the trial record, and the assessment of such a claim requires a court to consider the overall performance of counsel and the reasonable probability that the alleged error affected the outcome. *McIntire v. State*, 717 N.E.2d 96, 101 (Ind. 1999).

As noted, Bible does not point to any deficiency in the blood test procedure, the test result, or the chain of custody which his trial counsel should have raised before the trial court or could have pointed to had he requested a continuance. The record indicates that Bible's trial counsel "tried to get [Bible] to plead," but does not indicate any further detail. The record does not include any evidence showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Under the circumstances, we cannot say that Bible has demonstrated prejudice or ineffective assistance of counsel.

## *Conclusion*

For the foregoing reasons, we affirm Bible's conviction.

Affirmed.

Vaidik, C.J., and Bradford, J., concur.